1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Nicole Ramos,                          No. 1:21-cv-01103-KJM-SAB

12                      Plaintiff,           ORDER

13          v.

14   Janel Espinoza et al.,

15                      Defendants.

16

17          Plaintiff Nicole Ramos brings this § 1983 action for alleged violations of her Eighth

18   Amendment rights.  Defendants move jointly for summary judgment and plaintiff countermoves

19   for summary adjudication.  The court **denies** defendants' motion in part and **grants** the motion in

20   part, and **denies** plaintiff's countermotion.

21   I.     BACKGROUND

22          Ms. Ramos brings this case for violations of her civil rights under the Eighth Amendment,

23   alleging sexual battery, supervisory liability and a conspiracy to violate her constitutional rights

24   while incarcerated.  *See* First Am. Compl. ¶ 1, ECF No. 46.  Janel Escobedo (erroneously sued

25   herein as "Janel Espinoza")[1] and Dr. Timothy Beach move jointly for summary judgment and

---

[1] The court cites Warden Escobedo's declaration and supporting exhibits using the incorrect name "Espinoza" to maintain consistency with the record.  In the future, parties are directed to use the correct name, "Escobedo," in their filings.

1    plaintiff countermoves for summary adjudication.[2]  *See* Joint Mot. Mem. P. & A. (Mot.), ECF

2    No. 58-1; Counter Mot., ECF No. 94.

3            While in custody of the California Department of Corrections and Rehabilitation (CDCR)

4    after her conviction for vehicular manslaughter, Ms. Ramos was housed at the Central California

5    Women's Facility (CCWF) from 2014 to 2018.  Mot. at 7; First Am. Compl. ¶¶ 15–19; CDCR

6    External Movements Log, Espinoza Ex. L, ECF No. 84.  Defendant Dr. Beach worked as a

7    CDCR clinical psychologist from 2006 to 2018.  Mot. at 8.  From 2012 to 2018, CDCR assigned

8    Dr. Beach to CCWF.  *Id.*; First Am. Compl. ¶¶ 15–19.  Dr. Beach's workload at CCWF was

9    heavy, and included running an LGBTQ support group,[3] acting as the only CDCR psychologist

10   who worked with female inmates on death row, serving as the CDCR subject-matter expert on

11   transgender issues, triaging patients, providing emergency treatment to suicidal inmates and

12   seeing between nine and twelve patients a day.  Beach Decl. ¶ 4, App. Evid. Ex. A, ECF No. 62.

13   Dr. Beach conducted his individual sessions with clients in private meeting rooms.  Ramos Dep.

14   at 137, Dunn Decl. Ex. 1, ECF No. 92-1.  These meeting rooms were among the few spaces in

15   CCWF not under video or other surveillance.  *Id.*  The CCWF Chief Psychologist and CEO, both

16   of whom are not identified in the papers, supervised Dr. Beach.  *See* Mot. at 6.

17           From 2016 to 2018, CDCR also employed defendant Janel Escobedo first as CCWF Chief

18   Deputy Warden and then as Warden.  *Id.* at 7; First Am. Compl. ¶ 7.  Warden Escobedo's duties

19   included training and supervising custody staff, which did not include health professionals or

20   psychologists.  Mot. at 8; Espinoza Decl. ¶ 11, App. Evid. Ex. B, ECF No. 74.  CDCR's policies

---

[2] Ms. Ramos's amended complaint names Derral Adams, Janel Espinoza, Deborah K. Johnson, Timothy Beach and Does 1–10 inclusive as defendants.  First Am. Compl. at 1. Defendants Adams, Johnson and the Doe defendants do not appear in the case caption or in the arguments of the motion or countermotion.  At hearing, Ms. Ramos's counsel clarified she no longer asserts any claims against Adams, Johnson or any Does.  Any claims against Adams and Johnson are **dismissed**.  The court previously dismissed Does.  *See* Mins. Mot. Hr'g, ECF No. 108.

[3] The LGBTQ support group was for those incarcerated individuals who identified as lesbian, gay, bisexual, transgender or queer, or who, in Ms. Ramos's words "fit in somewhere along those letters."  Ramos Dep. at 130, Dunn Decl. Ex. 1, ECF No. 92-1.  When citing Ms. Ramos's deposition, the court uses the pagination appearing on the cited document.  For all other filings, the court uses the pagination automatically generated by the CM/ECF system.

1    prohibited "overfamiliarity" between staff and inmates at all CDCR institutions, including

2    CCWF. Espinoza Decl. ¶ 12. Warden Escobedo bore primary responsibility for handling

3    allegations of overfamiliarity between inmates and custody staff by launching an Investigative

4    Services Unit investigation. *Id.* ¶¶ 13–15. Relatedly, the Chief Psychologist and CEO bore

5    responsibility for addressing any allegations of overfamiliarity against medical staff. *Id.* ¶¶ 10–

6    11, 15.

7         Dr. Beach and Ms. Ramos met in group and individual therapy starting, at the latest, in

8    March 2018. Mot. at 6, 11; *compare* Ramos Dep. at 73 (explaining she first met Dr. Beach in

9    2017) *with* Beach Decl. ¶ 8 (asserting he first met Ms. Ramos in March 2018). Ms. Ramos

10    alleges Dr. Beach plied her with unsolicited gifts including jewelry, makeup, hair extensions,

11    cellular phones and prescription drugs she could sell within CCWF to other incarcerated

12    individuals. Ramos Dep. at 125–26, 131–35. Ms. Ramos asserts their private medical

13    appointments gradually became sexual and Dr. Beach began subjecting her to repeated sexual

14    battery and abuse including unwanted touching, fondling and oral sex. *Id.* at 134–46. From

15    March to June of 2018, Ms. Ramos estimates she met with Dr. Beach between twenty and fifty

16    times in the private and unmonitored appointment rooms with many of these encounters resulting

17    in unwanted sexual contact. Ramos Dep. at 106, 134–46. Defendants dispute the number of

18    private meetings between Dr. Beach and Ms. Ramos and further assert no sexual battery occurred

19    during any meetings. *See* Mot. 10–11, 22.

20         In June 2018, Dr. Beach voluntarily left his position with CDCR. Beach Decl. ¶ 25. The

21    same month, Ms. Ramos, who remained in custody, began contacting him using other

22    incarcerated individuals' cell phones. *Id.* ¶¶ 27–29. During these text and phone conversations,

23    Ms. Ramos sent approximately 150 nude photographs and videos of herself, and Dr. Beach sent

24    her money on multiple occasions. *Id.* ¶¶ 42–44, 49, 52, 62, 87. The parties continued their

25    telephonic communications until September 2020. *Id.* ¶ 84. On August 31, 2020, Ms. Ramos, for

26    the first time, reported to prison staff she was sexually victimized by Dr. Beach while housed at

27    CCWF. *Id.* ¶ 85.

1    During her tenure at CCWF, Warden Escobedo was not aware of any allegations of

2    overfamiliarity concerning Dr. Beach and Ms. Ramos.  Espinoza Decl. ¶ 16.  Warden Escobedo's

3    duties involved supervising all custody staff, but did not encompass managing health services

4    employees, including clinical psychologists like Dr. Beach.  *Id.* ¶ 9.  Instead, the direct

5    supervision of mental health staff fell to the prison CEO and Chief Psychologist.  *Id.* ¶ 5.  While

6    Warden Escobedo and Dr. Beach rarely interacted, the Warden did write a letter of support for

7    Dr. Beach in 2017 following the Board of Psychology's petition to revoke his license.  *Id.* ¶¶ 23,

8    26; Beach Decl. ¶ 91.  California issued the probation revocation petition to the Board due to

9    Dr. Beach's positive blood alcohol tests, which violated the terms of a probationary term he was

10   serving.  Pet. Revoke Probation at 5, Req. Judicial Notice Ex. E, ECF No. 91-5.  Specifically,

11   Dr. Beach was on probation for: (1) fraud and deception related to not disclosing a 2001 DUI

12   conviction and 1997 misdemeanor reckless driving conviction; (2) a subsequent 2009 DUI

13   conviction; and (3) a Gross Negligence charge for leading a Ph.D. student he provided feedback

14   to during her required practicum at Valley State Prison for Women (VSPW) to believe he could

15   influence her career placement "if she dated and had sex with him."  Stmt. Facts No. 23, ECF

16   No. 99; Second Am. Accusation at 5, 6–8, Req. Judicial Notice Ex. A, ECF No. 91-1.[4]  During

17   the predicate investigation leading to a stipulated settlement and disciplinary order, the Board

18   partially dismissed additional charges against Dr. Beach including multiple allegations of sexual

19   misconduct against Ph.D. students participating in the practicum program at VSPW.  Decision &

20   Order, Req. Judicial Notice Ex. B, ECF No. 91-2.  Ms. Ramos alleges it can be inferred Warden

21   Escobedo knew about the nature and extent of the previous sexual misconduct charges against

---

[4] Ms. Ramos requests the court take judicial notice of adjudicative documents from the California Board of Psychology Department of Consumer Affairs related to Dr. Beach's disciplinary record.  ECF No. 91.  Defendants oppose the request.  ECF No. 97.  Courts may take judicial notice of records and filings from other court proceedings.  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  "But a court cannot take judicial notice of disputed facts contained in such public records."  *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Lacayo v. Donahoe*, No. 14-04077, 2015 WL 993448, at *10 (N.D. Cal. Mar. 4, 2015) (taking judicial notice of documents but "only . . . [as to] the existence of the administrative proceedings and the agency's findings" and "not credit[ing] the truth of any fact recounted or matter asserted in the documents").  The court takes judicial notice of the adjudicative proceedings but does not credit the truth of any facts recounted therein.

1   Dr. Beach from her agreement to write a letter on his behalf.  First Am. Compl. ¶ 31.  Warden

2   Escobedo asserts she had no knowledge of any charges against Dr. Beach other than the predicate

3   DUI offense.  Espinoza Decl. ¶ 26.  Notwithstanding her other allegations, Ms. Ramos does not

4   argue or allege Warden Escobedo ever failed to supervise, train or investigate any accusations of

5   overfamiliarity within CCWF, including any allegations against Dr. Beach.  Stmt. Facts Nos. 14,

6   15, 111.

7          Ms. Ramos brings this § 1983 claim against Dr. Beach based on alleged sexual battery in

8   violation of her Eighth Amendment rights to be free from cruel and unusual punishment.  First

9   Am. Compl ¶¶ 24–37.  She also brings a § 1983 claim against Warden Escobedo based on

10  supervisory liability.  *Id.*  Ms. Ramos further alleges Dr. Beach and Warden Escobedo

11  participated in a § 1983 conspiracy to violate her constitutional rights.  *Id.* ¶¶ 38–47.  Defendants

12  argue no reasonable jury could find they violated Ms. Ramos's Eighth Amendment rights because

13  the alleged sexual battery never occurred, and any relationship was consensual.  *See generally*

14  Mot.; Defs.' Answer at 5–6, ECF No. 48.  In the alternative, defendants assert qualified immunity

15  shields Dr. Beach and Warden Escobedo from liability.  Mot. at 28–29.

16         Defendants jointly move for summary judgment on these grounds.  *See generally* Mot.

17  Plaintiff has opposed the motion, Opp'n, ECF No. 90, and defendants have replied, Reply, ECF

18  No. 95.  Plaintiff then filed an untimely countermotion for summary adjudication of her first

19  claim alleging Dr. Beach violated her civil rights under § 1983.[5]  Counter Mot.  Defendants

20  opposed the motion in their reply.  *See* Reply at 1.  Plaintiff did not reply.

21         The court held a hearing on this matter via videoconference on November 21, 2024.  *See*

22  Mins. Mot. Hr'g, ECF No. 108.  Brian Dunn appeared for plaintiff.  *Id.*  Martin Kosla appeared

23  for defendant Janel Escobedo.  *Id.*  Defendant Timothy Beach appeared *pro se*.  *Id.*  While

24  Dr. Beach proceeded *pro se*, in several instances Mr. Kosla appeared to argue for him, which the

---

[5] The court, in its discretion, considers the countermotion.  In the future, the court may not consider untimely motions and may impose sanctions for disregarding filing deadlines under the Federal Rules of Civil Procedure, this district's Local Rules and this court's standing civil order.

1  court allowed under the circumstances.  As discussed below, at trial and in future proceedings Dr.

2  Beach must be prepared to represent himself in full or retain an attorney to do so.

3  **II.    LEGAL STANDARD**

4      Summary judgment is appropriate if "there is no genuine dispute as to any material fact

5  and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is

6  "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

7  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome

8  of the suit under the governing law." *Id.*  The parties must cite "particular parts of materials in

9  the record." Fed. R. Civ. P. 56(c)(1).  The court then views the record in the light most favorable

10  to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita Elec.*

11  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*,

12  398 U.S. 144, 157 (1970).

13      The party moving for summary judgment must first carry its initial burden of production.

14  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz*

15  *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If, as in this case of the defendants' motion for

16  summary judgment, the moving party would not have the burden to prove the disputed § 1983

17  claim at trial, then it must carry its initial burden of production at summary judgment in one of

18  two ways: "either produce evidence negating an essential element of the nonmoving party's claim

19  or defense or show that the nonmoving party does not have enough evidence of an essential

20  element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102.  Then,

21  to carry its burden of persuasion on the motion, the moving party must "persuade the court that

22  there is no genuine issue of material fact." *Id.*

23      In the case of the defendants' qualified immunity defense, because they would bear the

24  burden of proving their disputed defense at trial, they must cite portions of the record to show "no

25  reasonable jury" could find in favor of the non-moving party. *Snell v. Bell Helicopter Textron,*

26  *Inc.*, 107 F.3d 744, 746 (9th Cir. 1997).  The defendants must "establish beyond controversy

27  every essential element" of their qualified immunity defense. *S. California Gas Co. v. City of*

28  *Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (per curiam) (internal quotations and citations

1    omitted).  "If the nonmoving party fails to produce enough evidence to create a genuine issue of

2    material fact, the moving party wins the motion for summary judgment.  But if the nonmoving

3    party produces enough evidence to create a genuine issue of material fact, the nonmoving party

4    defeats the motion."  *Nissan Fire*, 210 F.3d at 1103 (citing *Celotex*, 477 U.S. at 322).

5        A cross motion for summary adjudication is evaluated under the same standard, "giving

6    the nonmoving party in each instance the benefit of all reasonable inferences."  *Am. Civil*

7    *Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).  For

8    Ms. Ramos to prevail on her motion to find Dr. Beach violated her Eighth Amendment rights, she

9    must cite portions of the record to show "no reasonable jury" could find in favor of the non-

10   moving party.  *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997).  She

11   must "establish beyond controversy every essential element" of her claim.  *S. California Gas Co.*,

12   336 F.3d at 888 (internal citations and quotations omitted).  In the following discussion, the court

13   considers the merits of both parties' pending motions given their overlap.

14   **III.   ANALYSIS**

15       **A.      Section 1983 Claims Against Dr. Timothy Beach**

16       Defendants argue no reasonable jury could find they violated Ms. Ramos's Eighth

17   Amendment rights because the relationship between Dr. Beach and Ms. Ramos was indisputably

18   consensual and noncoercive.  The Eighth Amendment protects incarcerated individuals' right to

19   be free from cruel and unusual punishment, including "in the simplest and most absolute of terms

20   . . . to be free from sexual abuse."  *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

21   The power dynamics between incarcerated individuals and prison officials "make it difficult to

22   discern consent from coercion."  *Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012).

23   Because distinguishing between consent and coercion is difficult, when an incarcerated individual

24   alleges sexual abuse by a prison official, she is "entitled to a presumption that the conduct was

25   not consensual."  *Id*. at 1049.  In turn, defendants may rebut the presumption by "showing the

26   conduct involved no coercive factors."  *Id.*  While the court in *Wood* declined to extensively

27   analyze what might constitute "coercive factors" it did list "favors, privileges, or any type of

28   exchange for sex."  *Id.*

1  Ms. Ramos is entitled to a presumption that the conduct here was not consensual.  To

2 succeed on their motion for summary judgment, defendants must show no reasonable factfinder

3 could find evidence of any coercive factors.  Defendants fall short of their burden.  In their

4 motion, defendants point to "numerous telephone conversations during which [Dr. Beach and Ms.

5 Ramos] discussed their relationship and the possibility of marriage," photographs Ms. Ramos sent

6 "in sexually suggestive poses" and voicemails wishing Dr. Beach "happy birthday" as evidence

7 the relationship "was *consensual*."  Mot. at 23–25 (emphasis in original).  But this evidence does

8 not undisputably show the relationship was free from coercive factors.  Viewing the record in the

9 light most favorable to Ms. Ramos, as the court must do when evaluating the defendants' motion,

10 *see Matsushita*, 475 U.S. at 587–88, disputed evidence shows Dr. Beach sent her money, gave her

11 gifts and offered her favors.  Ramos Dep. at 125–26, 131–35.  A reasonable factfinder could

12 find—but would not have to find—Dr. Beach's favors and gifts to be coercive, offered in

13 exchange for a continued sexual relationship regardless of any continued contact between the

14 parties following the alleged battery.  *See, e.g.*, *Wood*, 692 F.3d at 1049–50.

15  Because Ms. Ramos has produced evidence to support a reasonable jury's finding the

16 presence of coercive factors, and therefore the absence of consent, she defeats defendants' motion

17 for summary judgment on this claim.  But a reasonable jury could also resolve the factual disputes

18 in defendants' favor, and the court therefore also denies Ms. Ramos's countermotion for summary

19 judgment on this claim.

20  Defendants assert Dr. Beach is entitled to qualified immunity, even if his relationship with

21 Ms. Ramos violated her Eighth Amendment rights.  Mot. at 28–29.  "A government official's

22 entitlement to qualified immunity depends on (1) whether there has been a violation of a

23 constitutional right; and (2) whether that right was clearly established at the time of the officer's

24 alleged misconduct."  *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (citation and

25 marks omitted).  "[U]nder either prong, courts may not resolve genuine disputes of fact in favor

26 of the party seeking summary judgment."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per

27 curiam).

1    As explained above, the record before the court does not support a conclusion under the

2    first qualified immunity prong that, as a matter of law, Dr. Beach did not violate Ms. Ramos's

3    Eighth Amendment rights.  That said, if the court finds there was no clearly established law

4    putting Dr. Beach on notice of the unconstitutionality of his behavior, it could grant the motion

5    for summary judgment without determining whether the alleged constitutional violation occurred.

6    *See, e.g.*, *Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010) (affirming district

7    court's grant of summary judgment on alternate grounds that qualified immunity shielded

8    defendants); *Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("If the law did not put the [defendant] on

9    notice that [his] conduct would be clearly unlawful, summary judgment based on qualified

10    immunity is appropriate.").  The inquiry into whether a right was clearly established "must be

11    taken in light of the specific context of the case, not as a broad general proposition." *Saucier,*

12    533 U.S. at 201.  "[T]he right the official is alleged to have violated must have been 'clearly

13    established' in a more particularized, and hence more relevant, sense:  The contours of the right

14    must be sufficiently clear that a reasonable official would understand that what he is doing

15    violates that right." *Anderson v. Creighton*, 483 U.S. 635 (1987).

16    Since at least 2000, the law is clearly established that incarcerated individuals have the

17    right to be free from cruel and unusual punishment, including "in the simplest and most absolute

18    of terms . . . to be free from sexual abuse." *Schwenk*, 204 F.3d 1197.  As explained above, since

19    at least 2012, the law has recognized that romantic relationships between prison staff and

20    incarcerated individuals are subject to an "enormous power imbalance" and thus, an incarcerated

21    person's ability to consent "is a dubious proposition." *Wood*, 692 F.3d at 1043.  In *Wood*, the

22    Ninth Circuit held that coercive factors make such a relationship presumptively non-consensual

23    and a violation of Eighth Amendment rights.  The undisputed facts here closely track the record

24    supporting the appellate court's reasoning in *Wood*: a member of prison staff became overly

25    familiar with an incarcerated individual, and allegedly offered gifts and favors; a jury could

26    reasonably find these actions to be coercive and the relationship non-consensual.  *Id.*  In other

27    words, the court cannot resolve the second qualified immunity prong in defendant's favor.  It is

28    for a jury to resolve the first.

9

1    The court denies both parties' motions for summary judgment on Ms. Ramos's first claim

2    for cruel and unusual punishment under the Eighth Amendment.

3        **B.    Section 1983 Claims Against Warden Janel Escobedo**

4        Defendants also move for summary judgment on Ms. Ramos's § 1983 supervisory

5    liability claims against Warden Escobedo.  Mot. at 24–26.  Defendants assert no violation of the

6    Eighth Amendment occurred, or in the alternative, Warden Escobedo was not Dr. Beach's

7    supervisor, thereby precluding any potential causal connection between a failure to supervise and

8    the sexual battery.  *Id.*  Ms. Ramos does not address defendants' arguments in her opposition or

9    countermotion.  *See generally* Opp'n; Counter Mot.  At hearing, Ms. Ramos's counsel conceded

10   she abandoned her claims against Warden Escobedo.  Nevertheless, this Circuit's interpretation of

11   Federal Rule of Civil Procedure 56(e) "prohibit[s] the grant of summary judgment 'by default

12   even if there is a complete failure to respond to the motion.'"  *Heinemann v. Satterberg*, 731 F.3d

13   914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)).  In the

14   interests of resolving the issue on the merits, the court does so below.

15       It is well established that "[a] supervisory official is liable under § 1983 so long as 'there

16   exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

17   sufficient causal connection between the supervisor's wrongful conduct and the constitutional

18   violation.'"  *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting

19   *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018)).  The causal connection is established

20   "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of

21   acts by others, which [the supervisor] knew or reasonably should have known would cause others

22   to inflict a constitutional injury."  *Id.* (alteration in original) (quoting *Starr v. Baca*, 652 F.3d

23   1202, 1207–08 (9th Cir. 2011)).  Therefore, "[a] supervisor can be liable in his individual

24   capacity for his own culpable action or inaction in the training, supervision, or control of his

25   subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a

26   reckless or callous indifference to the rights of others."  *Starr*, 652 F.3d at 1208 (quoting *Watkins

27   v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).  "A supervisor is liable under § 1983

28   for a subordinate's constitutional violations 'if the supervisor participated in or directed the

1 violations, or knew of the violations and failed to act to prevent them.'" *Maxwell v. County of*

2 *San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th

3 Cir. 1989)).

4        Defendants produce unrebutted evidence that Warden Escobedo did not supervise

5 Dr. Beach, so as to warrant summary judgment.  Ms. Ramos concedes Warden Escobedo was not

6 responsible for the supervision, training or discipline of prison mental health staff.  Stmt. Facts

7 Nos. 6–8.  Instead, these supervisory and disciplinary responsibilities fell to the CEO and Chief

8 Psychologist.  *Id.*  There is no evidence Warden Escobedo failed to investigate any allegations of

9 sexual abuse or overfamiliarity by incarcerated individuals, and Ms. Ramos admits she did not

10 make any such complaints during the relevant period.  *Id.* No. 14.  No genuine dispute of material

11 fact calls into question whether Warden Escobedo supervised Dr. Beach or failed to investigate

12 allegations of sexual battery.  Because Warden Escobedo did not supervise Dr. Beach, she cannot

13 be held liable under § 1983 for any failure to supervise.  *Cf. Rodriguez*, 891 F.3d at 798 (requiring

14 supervisor to be personally involved in constitutional deprivation or else causally connected to

15 deprivation for a claim to be valid).

16        The court grants summary judgment for the defense on Ms. Ramos's claim against

17 Warden Escobedo for supervisory liability under § 1983 and therefore does not need to reach the

18 question of qualified immunity on this claim.

19        **C.**    **Section 1983 Civil Conspiracy Claim**

20        Ms. Ramos's second claim alleges Dr. Beach and Warden Escobedo participated in a

21 conspiracy to violate her constitutional rights under § 1983.  First Am. Compl. ¶¶ 38–47.

22 Defendants assert there was no necessary "meeting of the minds," even if there was a violation of

23 Ms. Ramos's constitutional rights.  *See* Mot. at 26–27.  Ms. Ramos does not address this claim in

24 her opposition or countermotion and at hearing her counsel conceded she has abandoned this

25 claim as well.  *See generally*, Opp'n; Counter Mot.  In any event, defendants may prevail on the

26 merits of their motion for summary judgment on Ms. Ramos's § 1983 civil conspiracy claim if

27 they can demonstrate the record cannot support a necessary element of the claim.  *See Nissan*

28 *Fire*, 210 F.3d at 1102.

To establish liability for § 1983 conspiracy, Ms. Ramos must have suffered a constitutional injury and "demonstrate the existence of an agreement or meeting of the minds" between Warden Escobedo and Dr. Beach to violate her constitutional rights. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc); *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). Defendants' knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. *Gilbrook*, 177 F.3d at 856–57.

Ms. Ramos supports her claim of a § 1983 conspiracy with evidence Warden Escobedo wrote a letter of support to the Board of Psychology on behalf of Dr. Beach in 2017. Stmt. Facts No. 23. Defendants assert Warden Escobedo agreed to write a letter related to a petition to revoke Dr. Beach's license based on a breach of probation following a 2011 DUI offense. *Id.*; Mot. at 27. Ms. Ramos alleges the Warden's letter related to both Dr. Beach's breach of probation terms following predicate charges of fraud for failure to disclose a 2001 DUI and 1997 reckless driving conviction, a subsequent 2009 DUI conviction, and allegations of sexual misconduct by Ph.D. students he advised. Stmt. Facts No. 23.

Although Ms. Ramos suggests Warden Escobedo's willingness to draft the letter shows the required "meeting of the minds," Ms. Ramose does not dispute the interactions between Dr. Beach and Warden Escobedo were largely limited to general meetings, Warden Escobedo was not responsible for handling accusations against medical staff, or that the Warden appropriately handled all accusations concerning prison staff. *Id.* Nos. 6–8, 14. Furthermore, Ms. Ramos does not dispute Warden Escobedo and Dr. Beach at no point had "any conversations or communications with each other during which they conspired to violate [her] constitutional rights." *Id.* Nos. 111–12. Even viewing the record in the light most favorable to Ms. Ramos,

1    Warden Escobedo's letter does not reflect a meeting of the minds sufficient to support a § 1983

2    civil rights conspiracy.

3        Because defendants show Ms. Ramos could not support each element of her § 1983 civil

4    conspiracy at trial, the court grants summary judgment of the claim.

5    **IV.    DR. BEACH'S *PRO SE* STATUS**

6        Because the court is granting summary judgment on both claims against Warden

7    Escobedo and dismissing Derral Adams, Deborah Johnson and Does, Dr. Beach is the sole

8    defendant remaining.  At hearing Dr. Beach, appearing *pro se*, could not answer many of the

9    court's questions and, as noted above, Warden Escobedo's counsel spoke on his behalf.  Given

10   that the case will now proceed to trial, Dr. Beach must notify the court if he will continue to

11   represent himself *pro se* or will retain counsel.

12   **V.    CONCLUSION**

13       For the foregoing reasons, the court **grants** defendants' motion for summary judgment in

14   part and **denies** the motion in part.  The court **denies** plaintiff's motion for summary adjudication.

15   The court **grants** plaintiff's request for judicial notice.

16       1)  The court **denies** defendants' motion with respect to plaintiff's § 1983 claim against

17           Dr. Beach.

18       2)  The court **grants** defendants' motion with respect to plaintiff's supervisory liability

19           claims against Warden Escobedo.

20       3)  The court also **grants** defendants' motion to dismiss plaintiff's claims of a § 1983

21           civil conspiracy.

22       4)  Derral Adams, Deborah Johnson and Does 1–10 are **dismissed**.  The clerk of court is

23           directed to update the caption.

24       5)  The court **denies** plaintiff's countermotion for summary adjudication.

25       Dr. Beach must notify the court of his decision to proceed *pro se* or retain counsel within

26   fourteen days.

27       A final pretrial conference is set for **March 27, 2025, at 10 a.m.**  The parties shall meet

28   and confer and file a joint status report fourteen days prior to the final pretrial conference

1   addressing matters the court should consider in setting a trial date, including whether they request

2   referral to a magistrate judge to conduct a court-convened settlement before the final pretrial

3   conference.  *See* E.D. Cal. L.R. 282; Fed. R. Civ. P. 16.

4       This order resolves ECF Nos. 58, 91 & 94.

5       IT IS SO ORDERED.

6   DATED:  February 25, 2025.

7

UNITED STATES DISTRICT JUDGE